UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EVELYN RUNYON,

        Plaintiff,                    Civil Action 2:20-cv-3820
                                          Judge Michael H. Watson
   v.                                  Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.


**REPORT AND RECOMMENDATION**

    Plaintiff, Evelyn Runyon ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. This matter is before the undersigned on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 13). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** the case under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

                              **I.**      **PROCEDURAL HISTORY**

    Plaintiff protectively filed her application for disability insurance benefits on March 7, 2017, alleging that she had been disabled since August 1, 2013. (R. 201–02.) On May 7, 2019, following administrative denials of Plaintiff's application both initially and on reconsideration, Administrative Law Judge Timothy G. Keller (the "ALJ") held a hearing. (R. 72–94.) Plaintiff,

represented by counsel, appeared and testified, along with impartial vocational expert Hermona C. Robinson (the "VE"). On May 28, 2019, the ALJ issued a decision denying Plaintiff's claim. (R. 47–66.) On May 26, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's determination as the Commissioner's final decision. (R. 1–4.) Plaintiff then timely commenced this action. (ECF No. 1.)

In her Statement of Errors, Plaintiff raises a single contention of error: the ALJ improperly disregarded, without explanation, consultative examiner Todd Finnerty's opinion that Plaintiff be limited to "superficial," and not just "occasional" social interaction. (Statement of Errors 9, ECF No. 16.)

## II. THE ALJ'S DECISION

The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 47–66.) At step one of the sequential evaluation process,[1] the ALJ found that there was a 12-month continuous period following Plaintiff's alleged disability onset date during which she did not engage in substantial gainful activity. (R. 49–50.) At step two, the ALJ found

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that Plaintiff had the following severe impairments: degenerative disc and joint disease of the spine, arthritis with a history of positive rheumatoid factor, degenerative joint disease of the left knee, bilateral shoulder cuff tendinitis, hearing loss, vertigo, an anxiety disorder with panic, posttraumatic stress disorder, and a depressive disorder. (R. 50.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 51–52.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC:[2]

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could frequently climb ramps and stairs and could occasionally climb ladders. She could frequently balance, stoop, kneel, crouch, and crawl. The claimant could occasionally reach overhead. The claimant should avoid exposure to moving machinery, unprotected heights, and very loud noise. **She retained the ability to respond appropriately to supervisors and coworkers in a task-oriented setting with occasional public contact and occasional interaction with coworkers.** She was able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(R. 52) (emphasis added.)

At step five of the sequential process, the ALJ found that "the demands of the [Plaintiff's] past relevant work exceeded" her RFC, but that according to the VE's testimony, Plaintiff could perform jobs that exist in significant numbers in the national economy. (R. 64–65.) Based on the RFC and the VE's testimony, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III.   RELEVANT RECORD EVIDENCE

It is the social functioning component of Plaintiff's mental RFC, emphasized above, that is at issue here. In crafting this component of the RFC, the ALJ relied on the reconsideration

---

[2] A claimant's residual functional capacity, or RFC, is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 4040.1545(a)(1).

3

opinion of state agency psychologist Todd Finnerty, Psy.D.³ (R. 63; *see also* R. 128.) Dr. Finnerty opined that given Plaintiff's mental health assessment, she could "interact with a small number of others briefly, superficially and infrequently." (R. 128.) The ALJ assigned "some" weight to this opinion, explaining in relevant part:

> The consultants initially opined the claimant was limited to a reduced range of light work, noting she required a small work group of 3-4 with routine contacts with supervisors and occasional routine and more superficial contacts with coworkers and the general public and could perform routine 3-4 step tasks but required support and explanation for major changes, gradually implemented. Upon reconsideration, [Dr. Finnerty] opined the claimant could sustain a static set of tasks without a fast pace; **could interact with a small number of others briefly, superficially, and infrequently**, could adapt to infrequent changes in a relatively static work environment. **The undersigned finds the reconsideration assessment more persuasive than the initial assessment**, noting the reconsideration assessment was based upon a greater review of the medical evidence of record.

(R. 63) (emphasis added.) And the ALJ specifically credited the social functioning component of Dr. Finnerty's opinion, explaining:

> The undersigned finds the limitation on social functioning consistent with the claimant's reports of increased anxiety and worry around others and history of anxiety attacks, especially when noncompliant with medications.

(R. 64.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

³ In most of his discussion, the ALJ lumps together the reconsideration opinions of Dr. Finnerty, who performed Plaintiff's mental evaluation, and Dr. Mehr Siddiqui, who performed the physical evaluation. *See* R. 63–64; *compare* R. 127–129 *with* R. 124–127. Because the physical limitations of the RFC are not at issue, the undersigned discusses the record only as it relates to the mental RFC, especially Dr. Finnerty's opinion. *See, e.g.,* Pl.'s Statement of Errors 12, ECF No. 16 ("the mental limitations are of primary concern here"); R. 75 ("the psychological is really the big issue here"); Def.'s Mem. in Opp'n 7, ECF No. 17 ("The ALJ relied most on Dr. Finnerty's opinion . . . .")

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff asserts a single contention of error: "the ALJ failed to account for the [Plaintiff's] social interaction limitations in the residual functional capacity." (Statement of Errors 9, ECF No. 16.) The undersigned agrees. The ALJ assigned some weight to the opinion of state agency reviewer Dr. Todd Finnerty but omitted without explanation Dr. Finnerty's

5

opinion that Plaintiff be limited to "superficial" contact with others. Relevant caselaw requires remand.

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 968p, 1996 WL 374184, at *7 (internal footnote omitted).

Here, despite assigning some weight to Dr. Finnerty's opinion and expressly finding Dr. Finnerty's social functioning limitations to be consistent with the record, the ALJ omitted from the RFC a key aspect of that opinion, and failed to explain why he did so. Dr. Finnerty opined that Plaintiff could "interact with a small number of others briefly, superficially and infrequently." (R. 128.) The RFC provided that Plaintiff "retained the ability to respond

6

appropriately to supervisors and coworkers in a task-oriented setting with occasional public contact and occasional interaction with coworkers." (R. 52.) The ALJ thus restricted Plaintiff to "occasional" interactions with others, but made no mention of the distinct recommendation that Plaintiff's interactions also be "superficial[]." The ALJ also offered no reasoning to support this choice.

This Court has repeatedly recognized that "limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' interaction." *See Hummel v. Comm'r Soc. Sec.,* No. 2:18-cv-28, at 7 (S.D. Ohio Mar. 13, 2020) (emphasis in original) (remanding where RFC discussed only "occasional" interactions when "superficial" interactions were also medically indicated); *see also Corey v. Comm'r Soc. Sec.,* No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions") (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). An ALJ may not replace a social functioning limitation regarding "superficial" interactions with one regarding "occasional" interactions, absent explanation. *See, e.g.*, *Barker v. Astrue*, No. 5:09 CV 1171, 2010 WL 2710520, at *5–6 (N.D. Ohio July 7, 2010) (ALJ erred by failing to include in plaintiff's "RFC the prior ALJ's findings . . . that Plaintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited Plaintiff to no more than *occasional* interaction with the public . . . and he made no mention of whether and to what extent Plaintiff

can interact with co-workers and supervisors"); *Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are distinct terms and finding that the ALJ erred by failing to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-CV-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-CV-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) ("The ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.") As in each of these cases, the ALJ here omitted the recommended social functioning limitation regarding "superficial" interaction after assigning it weight and failed to explain the omission.

  To be clear, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). And certainly, where, as here, an ALJ has accorded an opinion only "some weight," the ALJ need not include all of the limitations in the RFC or even discuss why certain limitations have been omitted. Rather, the problem here is that the ALJ's discussion reveals that he failed to even consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he appeared not to appreciate the distinction between "occasional" and "superficial" interaction. *See Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (remand required where the ALJ assigned "some weight" to state agency psychologists' opinion that the plaintiff was limited to superficial interactions, but erroneously attempted to address that opinion by limiting Plaintiff to occasional interaction).

8

The Commissioner takes the position that the term "superficial" is impermissibly "vague" and that the ALJ properly "translated" it into the more vocationally-precise term "occasional." (ECF No. 17 at 6–7.)  The Commissioner supports this position two ways.  First, he argues that while "occasional" is a term of art defined by Agency regulation, "superficial" is not defined in "the regulations, SSRs, HALLEX, or Dictionary of Occupational Titles." (*Id.* at 6–7.)  Second, he complains that Plaintiff relies on "a series of unpublished district court opinions," which the Commissioner suggests are inadequate without attempting to distinguish them.  *Id.*  Neither argument is persuasive.  First, the Commissioner has not identified authority for the proposition that a term defined by agency regulation should be afforded more deference than a term defined in this Court's caselaw.  Second, the Commissioner ignores this Court's body of caselaw, discussed *supra,* that directly supports Plaintiff's proposition.  This Court has specifically held that the term "superficial," which the Commissioner dismisses as "ambigu[ous]," without "certainty," "vague," and "insufficiently precise," *id.* at 7–8, has a clear meaning that the term "occasional" does not capture.  *Hummel,* No. 2:18-cv-28 at 8 ("'superficial interaction' is a well-recognized, work-related limitation . . . the contention that such a limitation . . . is 'not stated in vocationally relevant terms' is therefore untenable") (collecting cases).

The Commissioner's case support is also mostly "a series of unpublished district court opinions," although unlike Plaintiff's cases, these are all out-of-circuit.  *Cf.* S.D. Ohio Loc. R. 7.2(b)(2), "Preferred Authorities."  The one published case the Commissioner cites is *Shaibi v. Berryhill,* from the United States Court of Appeals for the Ninth Circuit.  883 F.3d 1102, 1106–07 (9th Cir. 2017).  In *Shaibi* the court found that an ALJ's RFC was supported by substantial evidence when it "limited" the plaintiff "to simple routine tasks in a non-public settling, with occasional interaction . . ." after crediting a physician's finding that the plaintiff could "relate to

9

others on a superficial work basis." *Id.* The *Shaibi* court found that "in the context of [the physician's] specific conclusions," the physician's "statement that [the plaintiff] could 'relate to others on a superficial work basis'" was distinguishable from a "limit[ation] to 'superficial contact' with coworkers," which is the case here. *Id.* Based on the specific record evidence, the court found that the ALJ provided adequate reasoning in support of her RFC, and that she did not improperly supplant a "qualitative" limitation with a "quantitative" one. *Id.* Here, by contrast, the ALJ provided no reasoning and omitted Dr. Finnerty's recommended qualitative limitation altogether.

Finally, the Commissioner argues that even if Plaintiff's contention of error is well-taken, the Court should affirm the Commissioner's decision because Plaintiff could perform the same work that the VE recommended regardless. (Mem. in Opp'n 10–12, ECF No. 17.) But this argument "invit[es] this court to perform a duty which is reserved to the ALJ. It is the ALJ, not the court, who must determine what jobs can be performed by plaintiff in light of her limitations." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812 at *3 (S.D. Ohio Jan. 16, 2020) (citations omitted) (refusing to apply "*post hoc* rationalization" to explain ALJ's omission of a recommended limitation from plaintiff's RFC, where the record contained no evidence about how the limitation, had it been included, would impact plaintiff's ability to work).

It is true that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Hummel,* No. 2:18-cv-28 at 9 (quoting *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)). But where an RFC assessment conflicts with a medical opinion, the ALJ must offer a traceable

10

explanation. *See id.* It is clear in this Court's precedent "[t]he terms 'occasional' and 'superficial' are not interchangeable." *Cooper,* 2018 WL 6287996, at *4. Therefore, the ALJ's unreasoned omission of a qualitative limitation on social interaction in an RFC, where he credited a medical opinion recommending one, is reversible error. The undersigned finds that remand is warranted because the ALJ found Dr. Finnerty's opinion to be supported by the record, but then failed to include a limitation for "superficial" interactions his RFC and failed to explain the omission.

## VI.     DISPOSITION

Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and the ALJ for further consideration consistent with this Report and Recommendation.

## VII.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE